The Honorable, the Judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Please be seated. Please announce the cases for submission this morning. Yes, Judge. The following cases are scheduled for argument this morning, June 15th, 2023. 223658, District of South Dakota, Judith Steckelberg et al v. Chamberlain School District. 222960, District of Minnesota, William Salier et al v. Walmart, Inc. et al. 223157, District of Minnesota, Florine Ching v. Officer Neil Walsh. 223335, District of Nebraska, J.T. Johnson Jr. v. Jenna R. Friesen. In addition, the following case is submitted on the briefs and record without oral argument. 231142, District of Minnesota, Adriana Beckler v. Rent Recovery Solutions. The first case for argument is 223658, Judith Steckelberg et al v. Chamberlain School District. Thank you. Mr. Delbert? Good morning, Judge Wilkin, Judge Erickson, Judge Kobus. I am Douglas Delbert of Sioux Falls, representing the Chamberlain School District in this case, with issues of FAPE, IDA, and related matters concerning the placement of a young man at an out-of-district facility other than the Chamberlain School District. The issue is, should the district be responsible for tuition and other charges related to the placement of their son, designated as AMS because of his minority, at a facility named Kaizen Academy in Utah, a facility whose only stated purpose is treating adolescent males with serious psychosexual issues. Kaizen Academy, in addition... You say only purpose, I don't know what you're referring to, because that's inconsistent with the facts. All right, well, then I apologize. It's one of the issues, but you just stated your conclusion. All right, that's correct. I'm sorry, Judge Wilkin. Really, the issue there, and I think it's an important point to focus on, is why was the judge's factual finding that both treatment and education were so intertwined that they were inseparable in the analysis of the FAPE? Really, the question is, what supports your argument that that's a clearly erroneous finding of fact? One of the difficulties with this case, Judge Erickson, is identifying just what those issues were simply because the administrative law judge hearing the case, Sua Sponte, found that the inextricably intertwined doctrine should be applied in this case. It was not argued, in fact, I don't believe the term was even used in briefing or other arguments made by the petitioners. Have we used that standard before? Excuse me? Has this court used that standard before? I don't believe so. That was mentioned in briefing, but I don't believe this court has. I think the most recent case of D.L. versus Landon, decided by this court just a couple of years ago, probably had the opportunity in that case to have applied the doctrine, but it did not. So, Judge Kobus, as far as I know, this court has not embraced that doctrine just yet. Back to Judge Erickson. When the matter was then briefed on appeal from the administrative law decision to the district court, my initial brief focused almost entirely on the inextricably intertwined doctrine. The district court made mention of the doctrine, but did not apply it, at least as I read the case, simply did not apply it to this case. The petitioners, in their briefing, did not even mention the inextricably intertwined doctrine either, which I suppose is some speculation, but I think they realized there simply aren't facts to support it. I had, in other briefing, the exact facts, and they may be in my brief here, the exact facts, which the administrative law judge utilized in finding the inextricably intertwined doctrine. Two of the phrases used were, I'm trying to remember them now, since I did not brief before this court that issue, but one had to do with the tailoring of classes for this young man. The Kaizen Academy utilized a third party contractor to provide online services for the 15 youths who were at the facility. There is not one word of any tailoring of classes, any structuring of any aspect of the education. I'm sorry, but which of your issues presented on appeal are we talking about? I guess mine is the broader issue, Judge Loken, as to whether the placement was appropriate. Right, but what you call the analysis strikes me as just rhetoric. Right. I mean, fill me in, because you're focusing on something that I was looking at, frankly, the merits, not what you call things. All right. Looking at the district court's opinion, pages 15 and 16, they quote a case from this court, TB, XREL, WB versus St. Joseph School District, at 677 F3rd 844, decided in 2012, in quoting with approval a language from the Carter case before the U.S. Supreme Court, defining special education, quote, as specially designed instruction to meet the unique needs of a child with disability. And, Judge Loken, that is probably the sole issue that I would argue here, that there was simply no evidence whatsoever that this online course at Kaizen Academy had anything specifically designed to meet the unique needs of this young man. In fact, it would seem that. So even if, okay, where does that lead you in terms of ultimate result? You've still got the school district doing conduct justifying self-placement. So you're just trying to get out of the $90,000, or what? That's, of course, the money is an issue, and it's big. I mean, the performance at Kaizen, educationally, academically, as I read briefs and a little bit of the record, was superb. So they did what IDA wanted done. I guess I would, with respect, take issue to the proof that what the educational program at Kaizen did that was excellent. There was no testimony to that. The only matter of- Well, there's some evidence of outcome, right? That's correct. That would tend to point to whatever they did was better than making a decision not to develop an IEP for the last year he was there, and making a decision not to post the lectures so that the child could participate in education. I mean, at the end of the day, this child looked abandoned. It looked like the parents were making repeated efforts to get the school district to do something. And I don't know what the principal was thinking at the end of that deal, but he just walked away, let it sit on his desk, and did nothing until he was replaced by somebody else. I mean, at the end of the day, the focal point of this issue is, what was the school district doing to meet the educational needs of this child consistent with the IDEA? Judge Erickson, it was a difficult situation. Well, it was difficult because nobody did anything. And, you know, I look at these poor parents and I say, what are they supposed to do when you decide to do nothing? I mean, it was difficult. It was expensive. It was a problem. And nobody knew exactly how to deal with it. You had got the report from the expert. Rather than implementing the expert's report, you went in to, like, stare at the walls and do nothing. What were the parents supposed to do? I would also argue, Judge Erickson, I may not have a good answer to your question, that where things really went off the rails was after the incident with the six-year-old girl. Absolutely. I get that. But, you know, here's the thing. The fape, you could put the child in home and provide direct educational opportunities for the children. Under the fape, you could assign a full-time person just to walk behind this kid all day long, which would have cost you less than $90,000, and continue to meet the educational needs. You could have done what the expert suggested you ought to do. But rather than implementing any of those, the response was, we're not going to update the IEP. And I don't see how that's not an abandonment to this child. Again, I may not have a good answer for that, except to say that the reason he was placed at Kaizen was his sexual conduct. And I get that. Because in the end of the day, if he was just an ordinary kind of behavior or a challenged kid who was throwing desks out of windows, he might not have ended up at Kaizen. But more than that, your client was unable to find a facility in South Dakota that would provide this combined educational and mental health psychological improvement. That is true. They did for several months. They worked with the state. Well, they had to find somebody. In their view, it had to be Medicaid or Medicare approved. Otherwise, we'd have to pay too much. And one place refused to refuse the request, and nobody else, they couldn't find anybody else. So what the parents' dilemma is even worse than Judge Erickson's suggesting. And they found in Utah an expensive place that could do both. And the academic reports, as I understand, in terms of general grade-level performance, is they succeeded educationally. And your reply brief said, oh, well, there was no evidence showing it was specifically designed to meet his disability. Yes, that is correct. Yeah, that's Dick then, Rowley. All right. You know, cases get much harder. I know. I'd like to reserve for- No, I've got another issue I want to talk about. Your remand issue. You say that your lawsuit that was removed was in implementing I-14, 15, I-B that allows a court action in state or federal court. And then you say IDEA doesn't control procedures. That's South Dakota law. We're under the South Dakota APA. Therefore, they're the plaintiffs. They're not the plaintiffs. But IDEA 14, 15, I specifically provides that wherever the IDEA appeal suit is, the parties have an expanded right to present evidence. And I assume that the South Dakota APA, like the federal APA, provides for review on the administrative record. It does, yes. So is your position that we must remand to a court that, therefore, cannot provide the remedial right provided in 14, 15? I believe that the circuit court could have heard the case from the administrative ruling, decided either that it was correct or not correct. The same. Sure. But the IDEA reviewing court, as is given by Congress, the unusual administrative review power to do something other than review on the record. Now, if your position is that the South Dakota APA governs your lawsuit and, therefore, those provisions, those evidentiary provisions don't apply, then that tells me your lawsuit was not an IDEA appeal. Agree or disagree? I believe it was an appeal from the ruling of the ‑‑ But if it's under South Dakota law, then it's not an IDEA appeal. That's true. Is that your position? Because it seems to me what follows from that is we enter an order directing the district court to enter judgment enforcing the administrative IJ's order under the IDEA and the supremacy clause controls, of course. So that, to me, is the fundamental problem with your remand argument. All right. I'm saying that because tell me why I'm wrong. Well, I don't know if you are or not. My position was that since it was an appeal to the circuit court as opposed to a civil action brought in federal court that the procedure should be ‑‑ then maybe remand is appropriate, but so is a summary affirmance of the order under the IDEA. You see the problem? And Judge Pearsall talked about this. He pointed out to these evidentiary provisions that would somehow be nullified or abrogated if you were right on who was a plaintiff and who was a defendant under your removal argument. I don't have a better answer than what I have in my brief. I'm sorry. It was kind of a gap for me. Thank you. Thank you, Judge. Ms. Ruggieri? Ruggieri. May it please the court. Good morning. I'm Gina Ruggieri, and I represent Judith and Michael Steckelberg in AMS. Today I ask you to uphold the judgment of the Honorable Lawrence Pearsall. It is absolutely clear in this case that Chamberlain denied AMS a FAPE. I'm not sure if Mr. Deibert has ever argued that they did provide him a FAPE, and he certainly didn't do so right here. It seems like we skip right to Kaizen. When you fail to give a child their BSP, when you draft an IEP without goals, and when you put a kid in their living room and don't put a way to deliver their education in their amended January 19 IEP, you procedurally and substantively violate the IDEA. It is unequivocally and absolutely clear that a FAPE was not provided to this child. They did nothing. They didn't care. I have a quote from Carla Burke, testified, I did the due process hearing. Mr. Deibert represented the district. Carla Burke was AMS's SPED teacher. I think it's a bit much to say they didn't care. I'm sorry, who didn't care? I think it's a lot, it's very unfair to say they didn't care. They certainly in hindsight at least did it wrong. They did it wrong. I mean they looked all over the state to find an alternative source. They told the parents, we agree to homeschool. Then they said, okay, we agree to homeschool. It didn't work. We agree that we should find an alternative placement, and they couldn't find one in South Dakota, and so they dropped the ball, punted, whatever you want to say. That's not saying they didn't care. And they looked across America for a placement, and every placement from auxiliary placement, which is an agency in South Dakota that looks for placements, no residential facility in America accepted AMS except for Kaizen. I think the sexual issues have a lot to do with it. But Carla Burke told me this. She said, the teachers were not invested in AMS the way they needed to be. And, quote, the staff did not want to do the boots on the ground work so that we could see some amount of success. They wanted him, AMS, out. They absolutely wanted AMS out of the district. So Judy and Mike went online and found Kaizen. It was an absolute perfect fit for AMS. He did so well. He really did. Kaizen, AMS has- Give me a cite to the record supporting a perfect fit. Well, nobody said in my argument it's a perfect fit, and I'll tell you why. AMS has pediatric, acute, neuropsychiatric- No, I'm just, what record are you- Where in the record are you relying? I have nothing wrong with you calling it, in legal argument, a perfect fit, but what supports that in the record? Give me cites. I didn't bring it up with me, Judge, but I'll tell you that he needed structure. And Janice Taylor, from the record, testified that Kaizen was only 15 students to a class, and it was very structured for AMS. He had a structured day where he woke up. Janice Taylor testified that he woke up a certain time, had breakfast, went to class, came home. AMS, he had been masturbating in the classroom at Chamberlain, so he needed psychosexual therapy. Kaizen, Janice testified that Kaizen provided psychosexual counseling for him. AMS has a cheating problem, and Janice testified that if he was caught cheating at Kaizen, they took the computer away and gave him paper packets. If you're cheating, you're not learning. If AMS was looking at porn on that computer, they took the computer away. If you're looking at porn, you're not learning. So they provided him, through her testimony, and I guess that's the best I have to answer your question. It's in the transcript. Through Ms. Taylor's testimony, she told us that it was, what I argue, a perfect fit. Who had the burden of proof on these issues? We did, by a preponderance of the evidence. Okay, and the proof was basically the reasonableness, right? Correct. It was very reasonable. What allowed him to have success and achieve an educational benefit? Well, what difference would it have made if they had responded to the notice that we're going to place him in Kaizen? If Chamberlain responded? Yeah, and if they had said, we don't think that's appropriate, and it's give us the prices, and you provide the prices with Kaizen quotes, and they say that's too expensive. Now, if that had been the evidence at the hearing, what would the issue have been? We would have still gone to the hearing because the law says if the district doesn't provide . . . To the district court. To the district court? Well, of course, this wasn't part of the administrative . . . well, maybe it was. But the issue in the district court is did the ALJ err under the IDEA alternate placement jurisprudence in picking this place at this cost? Because there was no other place. The other place was his living room at the time. That's why I think the living room thing . . . Well, except that's where they dropped the ball because if they'd have picked up on the notice, there might have been a record of other places. Right, they didn't . . . Or they might have negotiated with Kaizen. They might have, and they didn't respond. It's an automatic affirmance with your burden of proof that they didn't . . . Failed to respond. They defaulted? This is a defendant who defaulted in litigation terms? I never filed anything for default. I just went with the evidence. We had a great . . . Your argument is we had the burden of proof, but we win because, what, they defaulted? No, we win because Kaizen's appropriate and it's proper under the IDEA. I never filed any kind of default with Judge Pearsall. I just . . . he wanted briefs, and I briefed it, and we won in district court. I never filed any default with him. Maybe I'm not understanding the question. Here's the deal. Is it your argument that you presented evidence that was, to the weight of the evidence, sufficient to establish that Kaizen was the place that was available, it was appropriate, and to meet AMS's needs for a FAPE, that placement there was necessary, and then the expenses as charged were reasonable? Correct. Is it your argument that you presented evidence enough to do that, and then the school district never overcame that evidence? They never presented enough evidence to say that it was inappropriate? Absolutely. They didn't . . . Judge Pearsall found he hasn't . . . Mr. Diberk didn't put one thing . . . because it's his burden now with Judge Pearsall, right? So he didn't ever say, well, this is why the ALJ is wrong. This is why Kaizen's inappropriate. There is not one piece of evidence in that entire transcript or that huge file that Kaizen would be inappropriate. So what argument were they actually making in front of Judge Pearsall? The school district? Yeah. I'm not sure. They just attacked the ALJ's findings and conclusions, so . . . Okay, well, which specific findings? I mean, I assume that the factual issues were joined in the district court based on the record that had been developed in front of the IJ, and that there must have been some dispute over some of those findings, because Judge Pearsall's opinion is quite detailed and goes through and does quite an analysis, and I think if no issue was ever joined, I mean, as an old district judge, I don't think your opinion quite looks like that, although he's a lot more scholarly than I was, so it's possible. But I'm just asking you, you know, what issues were actually joined? You just don't think they were? And so in essence, whether it was a formal default or not, they never came forward with anything to say the IJ's got it wrong. Right. So what did they do in their briefing? I've got to tell you, I didn't go back and read the district court briefs. Well, you know, I just made sure, you know, he basically appealed every issue. I think we won on five out of six claims with the ALJ. Some were procedural and some were substantive. And he just went and I just felt like we did the whole case over. I mean, we didn't have trial with Judge Pearsall. We just did it on the briefs. Judge Pearsall had the entire record that was sent to him directly from the ALJ, and he went over each issue in detail and came up with the decision. I mean, you know, I was looking at a case before I came here, and it was independent school district versus AC, 258, 3D, 8th Circuit, 2001. And the judge said what should control our decision is whether the problem needs to be addressed so the child can learn, not whether the problem is non-educational or educational. Here, I think Mr. Deibert, a lot of the focus has been on the sex issue. You know, he went to Kaizen because he has sexual problems. Well, he's got behavioral problems, and sexual problem is one of those behavioral problems. He has a disease, this pediatric acute neuropsychiatric syndrome, that his autoimmune system attacks his brain stem. So this inseparable, I mean, the ALJ is not a doctor. She's not dissecting things. I mean, she couldn't separate anything. It was all his disorders and his Tourette's and his OCD and his mouth moving and shaking. His disability affected his behaviors, and they provided him absolutely no supports anywhere. I mean, it's in the transcript. It's all over the record. Parents begging for help, January 19 through May of 19, begging the district to answer them, how are you providing a FAPE in our living room? They told me at the hearing they didn't answer their emails. They did nothing. They walked away from this child. Parents had no place to put him except Kaizen. It's the only place that took him. In CJN versus Minneapolis, I know the court said one significant factor in awarding tuition reimbursement is how well he did. And according to Janice, he did great. He did good at Kaizen. His grades show it. Dr. Christiansen testified, and he was AMS's counselor, that his status went from guarded to fair when he graduated from Kaizen. Janice Taylor testified the behavior was decreased. He wasn't very good when he went there. He didn't want to be there. He was doing the same things, touching himself, and they redirected him. I mean, that's their specialty, sex issues. And they gave him the counseling and the structure, and yeah, the class was about people get their degree online. I mean, Mr. Divert makes a deal about this online classes. He had a desk. He had a computer. He had an onsite SPED teacher. And yeah, he took online classes too. But people get their degree online these days. You can't say that that's not an education. Of course it is. In the end, Kaizen, in my argument, was a fit for AMS, and it enabled him to, I don't know if Judge, I wrote this down. I'm not sure if Judge Pearsall wrote this, but Kaizen is proper because it forwarded the purpose of the IDEA. It treated his social and emotional issues and allowed him to receive an educational benefit from his education at Kaizen. All of the case law, I mean, with these behaviors, it's the same issues. These kids have behaviors, social and emotional behaviors. And Congress has provided for these behaviors. I understand all that, but the Supreme Court has taught us to be very skeptical of alternative placement. Right. It is an unfavored IDEA remedy, and therefore your burden of proof can't be just because we say so. No. And that's as to not only placement itself, but where and at what cost. Sure, and it was very expensive. I think this is also from AC. I think the A Circuit writes, there's a gray area between normal conduct and involuntary physiological response, and that is where Congress has chosen to locate behavioral problems in the statute, like AMS's in 20 U.S.C. 1403A. You're just talking about the merits? Yeah. And, you know, this behavior versus education, obviously education improvement has to be the end result. But if behavior, the cases are clear, and the Supreme Court holdings, or at least Dick does, clear that if the educational impairment is behavioral problems, they need to be treated too. Absolutely. They need to be in the IEP. And if the behavioral problems result in sexual misconduct, that's intolerable in a public or private school, and that has to be addressed. So these things aren't an issue. They're not. And I know you have wide discretion under the U.S. Supreme Court case law where you have wide discretion to reimburse these parents for the cost of this. It is very expensive. The last issue before I get cut off is travel. Judge Pearsall reduced their travel by $2,000 because they paid with hotel points. The parents asked me if we do prevail that that. Cross-appeal? No. You're not going to get $2,000? No. Okay. Well, thank you. Is there a rebuttal time? I'll give you a couple minutes for rebuttal, Mr. Divert. I took a lot of your time. If I can make just a couple of points. First of all, indeed, Kaizen may have been a good fit for this young man, but it was a good fit because of his psychosexual problems and nothing related to education. Second, and from some questions from Judge Loken, there isn't a bit of evidence from anyone at Kaizen who testified what unique materials or efforts they made to provide him an education. Not a single word as to what those unique components might have been. Next, the terms such as supports and structures are thrown around a great deal in this case without identifying what supports did he need, what structure, what does that mean, and what structure should have been provided to him, which is also lacking. Ms. Ruggieri argued that there is no evidence in the record that there was any other place where this child with this particular sequela of problems could have been placed in the United States. Is that an accurate representation of what we know? Admittedly, the parents looked at several places. The boy was rejected from several. The hunt was still going on, so to speak. Not fast enough, I'll admit that, but when Kaizen became known to the parents because of their Internet search and because of the keywords sexual misconduct, so that may not, trying to get back to your question, Judge Erickson, I don't, there were a handful, certainly, I can't remember from the record. The school district never identified an alternative placement or an alternative plan. That is correct, Judge Erickson. Thank you. Thank you, Counsel. Complex case. It's been thoroughly briefed, well argued, and we'll take it under advisement.